In the Matter of Fioravante Marra, Appellant, v City of White Plains et al., Respondents.

Second Department, October 24, 1983

APPEARANCES OF COUNSEL

*Eileen West* for appellant.

*Charles A. Bradley, Corporation Counsel (Joseph W. Hennebury* and *James W. Glatthaar* of counsel; *Timothy Kelleher* on the brief), for respondents.

### OPINION OF THE COURT

RUBIN, J.

Article 23-A of the Correction Law was enacted to prevent unfair discrimination in the licensure and employment of persons previously convicted of crimes (see *Matter of Schmidt & Sons v New York State Liq. Auth.*, 52 NY2d 751; *Matter of Incorporated Vil. of Val. Stream v Local 342*, 89 AD2d 1016). At issue here is the application of the criteria enumerated in article 23-A.

Petitioner Fioravante Marra is an ex-offender, having been convicted of disorderly conduct in 1973, burglary in the third degree in 1973 and 1969, attempted extortion and conspiracy in 1961 and other less serious crimes at earlier times. After his release from prison in December, 1975, following the 1973 burglary conviction, petitioner obtained employment with the assistance of the Advanced Opportunity Program (hereinafter AOP), a program for ex-offenders in Westchester County. Thereafter, petitioner was

retained directly by AOP as a counselor in April, 1977 and was promoted to the position of project director of the program in May, 1979.

In 1978, petitioner and one Raymond Bonazzo purchased a rooming house located at 19 Washington Avenue, in the City of White Plains, as an income-producing investment. In order to continue to operate the premises as a rooming house, the local ordinance required a transfer of the vendor's special residence facility license to the vendees (see An Ordinance Licensing and Regulating Buildings Containing Rooming Units in the City of White Plains [adopted Nov. 1, 1976]). Consequently, on March 7, 1978, petitioner and his co-owner made an application to the Department of Building of the City of White Plains for the renewal of the existing special residence facility license. Upon receipt of the application, respondent William E. Pisani, the then Deputy Commissioner of Building, immediately requested an investigation of the prior criminal records of petitioner and his coapplicant and, several days later, received an interdepartmental memorandum from the Deputy Commissioner of Public Safety, not revealed to petitioner, which recommended the denial of the application on account of the "extensive criminal records" of petitioner and Bonazzo. Nevertheless, in a letter to petitioner, dated April 10, 1978, Deputy Commissioner Pisani informed him that in order to assist the Department of Building in making a determination with respect to the application, a hearing would be held "to inquire into the matters referred to in Article 23-A of the Correction Law". At the hearing conducted on April 17, 1978, petitioner, Bonazzo and the current director of AOP testified. No complete official transcript of that hearing is available. The only record of the hearing is a partial summary of the questions and the responses to them made by respondent William E. Pisani. According to petitioner, this summary is biased, inaccurate and incomplete.

In a letter dated April 24, 1978, respondent Pisani, then Acting Commissioner of the Department of Building, denied the application for a license submitted by petitioner and Bonazzo. The major reasons proffered for the denial were: (1) the existence of a "direct relationship" between

the applicants' previous criminal offenses and the specific duties and responsibilities of a holder of the license sought, in particular, the duty and responsibility of a rooming house operator to safeguard the facility's occupants and their property (see Correction Law, § 752, subd [1]); (2) an unreasonable risk to the property, safety and welfare of the residents of the surrounding neighborhood presented by a rooming house operated by petitioner, who would allegedly use his position with AOP to refer ex-convicts to the facility, thus creating a "defacto 'half-way house'" (see Correction Law, § 752, subd [2]); and (3) no certificate of relief from disabilities or certificate of good conduct was submitted for either applicant. In this letter, dated April 24, 1978, Acting Commissioner Pisani explicitly discussed all of the factors set forth in section 753 (subd 1, pars [a]-[h]) of the Correction Law.

After the denial of his license application, petitioner filed two complaints with the New York State Division of Human Rights. He also commenced a proceeding pursuant to CPLR article 78 in the Supreme Court, Westchester County, to review Acting Commissioner Pisani's determination. Those proceedings were subsequently dismissed. By stipulation dated January 29, 1981, petitioner agreed to withdraw his proceeding to review the determination of the New York State Human Rights Appeal Board that there was no probable cause to believe that discrimination had occurred, without prejudice to his right to reapply in the future for a license to operate a rooming house. The stipulation explicitly stated that any new application was to be treated "*de novo*" and that the determination on whether to grant such an application was not to be based upon the denial of the original license in April, 1978 nor upon any of the decisions of the courts or the New York State Division of Human Rights with respect to that denial.

On March 3, 1981, petitioner filed a second application on his own behalf, for a license to operate a rooming house. Petitioner submitted along with this application a certificate of good conduct which he had obtained from the New York State Parole Board on or about February 19, 1981. In a letter dated March 6, 1981, only three days after the date

of petitioner's application, Commissioner Pisani again declined to issue the license to petitioner. Commissioner Pisani reiterated the reasons contained in his April 24, 1978 letter denying petitioner's first application, i.e., there was a direct relationship between the crimes of which petitioner had been convicted and his responsibility as the operator of a rooming house for the security of the occupants and their possessions and the rooming house under petitioner's management would create an unreasonable risk to the property, safety and welfare of the residents of the immediate neighborhood. The letter further stated that the decision was being rendered in accordance with subdivision (3) of section 703-a of the Correction Law, which states that "[a] certificate of good conduct shall not, however, in any way prevent any judicial administrative, licensing or other body, board or authority from considering the conviction specified therein in accordance with the provisions of article twenty-three-a of this chapter". Commissioner Pisani's letter recited two additional reasons for his denial of petitioner's second license application which were not included in his April, 1978 letter, namely that petitioner had been convicted and fined for "[v]iolations of the White Plains Building Code, and Rooming House Licensing and Regulatory Ordinance" in 1979 and 1980, and that petitioner had obtained a certificate of occupancy limiting the premises to single-family use, thus, reconversion of the building to a rooming house would violate the applicable building code safety requirements for fireproof construction. Petitioner's request for reconsideration of the denial of his second application and for a hearing in order to present character references on his behalf was denied.

In June, 1981, petitioner instituted the instant CPLR article 78 proceeding to, *inter alia,* review the determination of Commissioner Pisani and to direct him to issue the license. After the submission of an answer and reply papers, Special Term dismissed the proceeding upon finding that the commissioner's determination had a rational basis, was not arbitrary and capricious and involved the proper consideration of the standards respecting the licensure and employment of ex-offenders contained in article 23-A of the Correction Law. We disagree with those findings.

The express public policy of the State of New York, as provided in article 23-A of the Correction Law, is that conviction of one or more criminal offenses, per se, shall not be the basis for denial of a license unless: "(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license * * * sought; or (2) the issuance of the license * * * would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public" (Correction Law, § 752; *Matter of Incorporated Vil. of Val. Stream v Local 342*, 89 AD2d 1016, 1017, *supra; Matter of Stewart v Civil Serv. Comm.*, 84 AD2d 491, 493).

Section 753 (subd 1, pars [a]-[h]) of the Correction Law set forth the factors which the licensing body must consider in making a determination whether there exists a "direct relationship" or an "unreasonable risk" which warrants the denial of a license by reason of the applicant having been previously convicted of one or more criminal offenses. The commissioner's finding that both conditions specified in section 752 were present in petitioner's case, warranting the denial of his application, was based on an inadequate consideration of the factors enumerated in section 753 of the Correction Law.

According to the statutory definition, "direct relationship" means "that the nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the license or employment sought" (Correction Law, § 750, subd [3]). A direct relationship can be found where the applicant's prior conviction was for an offense related to the industry or occupation at issue (see *Matter of Schmidt & Sons v New York State Liq. Auth.*, 73 AD2d 399, affd 52 NY2d 751, *supra* [denial of a liquor license warranted because the corporate applicant's principal had a prior conviction for fraud in interstate beer sales]; *Matter of Barton Trucking Corp. v O'Connell*, 7 NY2d 299 [application for a license to operate a truck in garment district denied since one of the corporate applicant's principals had been previously convicted of extortion arising out of a garment truck racketeering operation]), or the elements inherent in the nature of the criminal offense

would have a direct impact on the applicant's ability to perform the duties necessarily related to the license or employment sought (see *Matter of Stewart v Civil Serv. Comm.*, 84 AD2d 491, *supra* [application for employment as a traffic enforcement agent denied; applicant had prior convictions for, *inter alia,* assault in the second degree, possession of a dangerous weapon, criminal possession of stolen property, and larceny]).

Commissioner Pisani found petitioner's two convictions for burglary in the third degree and his convictions for criminally receiving stolen property (a misdemeanor) and attempted extortion and conspiracy came within the statutory definition of a "direct relationship" to the specific license sought. Since burglary in the third degree is the offense that has the greatest potential for bearing directly on a rooming house operator's fitness and ability to perform the duties and responsibilities necessarily related to a special residence facility license, we need only address petitioner's convictions for this offense to demonstrate respondents' improper consideration of the criteria enumerated in section 753 of the Correction Law.

■ To be convicted of burglary, a person must knowingly enter or remain unlawfully in a building with intent to commit a crime therein (Penal Law, § 140.20). Considering the inherent elements of the criminal offense alone, burglary would arguably have a direct bearing on the responsibilities of a rooming house operator to safeguard the facility's occupants and their possessions. However, the inquiry does not end here because the direct bearing which emanates from the inherent nature of the offense may have been attenuated by other factors, such as the issuance of a certificate of relief from disabilities or a certificate of good conduct to the applicant; other information with respect to his rehabilitation and good conduct produced by the applicant or on his behalf, "[t]he time which has elapsed since the occurrence of the criminal offense [and] * * * [t]he age of the person at the time of occurrence of the criminal offense" (see Correction Law, § 753, subd 1, pars [g], [d], [e]; subd 2).

Here, the commissioner and Special Term have failed to recognize the import of subdivision 2 of section 753, which

provides that a certificate of good conduct like that issued to petitioner "shall create a presumption of rehabilitation in regard to the offense or offenses specified therein" (see *Matter of Maloney v Waterfront Comm.,* 96 Misc 2d 688). Subdivision 3 of section 703-a of the Correction Law does not negate the effect of this presumption, as that provision requires the licensing body to consider any conviction specified in a certificate of good conduct in accordance with the provisions of article 23-A of the Correction Law, including subdivision 2 of section 753. The statutory presumption of rehabilitation arising from petitioner's certificate of good conduct, which covers all the offenses for which he had been convicted, imposes a burden on respondents to come forward with evidence to rebut it, which respondents have not done (see Richardson, Evidence [Prince, 10th ed], § 58). Although determination of the weight to be given evidence of rehabilitation is the responsibility of the licensing authority, that responsibility must be exercised within the law, consonant with the policy of this State to assist in the rehabilitation of ex-offenders and to avoid discrimination against such persons in licensed professions and occupations (*Matter of Cantor v New York State Racing & Wagering Bd.,* 73 AD2d 544; *Matter of La Greca Rest. v New York State Liq. Auth.,* 33 AD2d 537). The respondent commissioner has failed to fulfill his responsibility with respect to the evidence of rehabilitation and good character presented by petitioner in conjunction with his application for a rooming house license (see Correction Law, § 753, subd 1, pars [a], [g]; *Matter of La Greca Rest. v New York State Liq. Auth., supra*).

Another factor to be considered in determining whether a "direct relationship" exists is "[t]he legitimate interest of the public agency * * * in protecting property, and the safety and welfare of specific individuals or the general public" (Correction Law, § 753, subd 1, par [h]). But in this instance, predicating the denial of the license on this factor is belied by the fact petitioner obtained from the White Plains Commissioner of Public Safety a license to drive a taxi, an occupation involving responsibility for the security of other persons and their possessions in many ways similar to that exercised by the operator of a rooming house.

Additionally, the annual issuance of a taxi license to petitioner corroborates petitioner's claim of rehabilitation and supports a finding that any bearing which petitioner's burglary convictions would have on his ability to perform his duty to safeguard persons and property has been attenuated. Consequently, a finding of a direct relationship between one or more of the previous criminal offenses and the specific license sought is not supported by this record.

■ Neither can we confirm the commissioner's denial of petitioner's application for a license to operate a rooming house predicated upon the second statutory exception, i.e., "the issuance of the license * * * would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public" (Correction Law, § 752, subd [2]). There were no facts in this record to support respondents' contention that petitioner, by virtue of his association with the program for ex-offenders, would show a predilection for renting to such persons and that this would create a security risk to the surrounding community. Respondents have based their predictions of such a risk to the neighborhood almost entirely on alleged statements that petitioner made at the hearing held in April, 1978, as summarized in the memorandum of Commissioner Pisani, which petitioner has challenged as incomplete and inaccurate. Moreover, the commissioner's reliance on reasons which he previously advanced as grounds for denying petitioner's first application in April, 1978 directly contravenes the language in the parties' stipulation guaranteeing *de novo* consideration of any new application. Although an agency's determination to deny a license application need only have a rational basis to pass judicial scrutiny, where, as here, the commissioner's determination is based upon "speculative inferences unsupported by the record", his determination should be annulled (see *Matter of Sled Hill Cafe v Hostetter,* 22 NY2d 607, 612-613; see, also, *Matter of Circus Disco v New York State Liq. Auth.,* 51 NY2d 24, 36; *Matter of G.J. & S. Pizza v McLaughlin,* 78 AD2d 653; *Matter of Cojer Rest. v New York State Liq. Auth.,* 47 AD2d 612; *Matter of Hayes v New York State Liq. Auth.,* 39 AD2d 482).

■ We further note that respondents' denial of the license application based upon petitioner's previous "[v]iola-

tions of the White Plains Building Code, and Rooming House Licensing and Regulatory Ordinance" is without merit. In *Matter of Pokoik v Silsdorf* (40 NY2d 769) the Court of Appeals concluded that a municipality may not deny a building permit based upon the applicant's past violations of a local zoning ordinance, since adequate civil and criminal sanctions exist to enforce the ordinance. The court reasoned that the denial of a permit, because the applicant committed past violations for which he had already been prosecuted, would amount to an additional, unauthorized sanction. Furthermore, the court held that the fact that the applicant previously violated an ordinance did not show that he would violate it again. This rationale is equally applicable to the instant case, particularly if it is found, as petitioner contends, that fines he paid with respect to some of the violations were refunded to him prior to his second license application because those violations had been corrected.

Additionally, there is no evidence that the commissioner actually ordered or considered inspection reports with respect to petitioner's building immediately prior to making his determination in March, 1981, to ascertain whether petitioner then complied with the relevant regulatory provisions, as required by sections 3 and 4 of the Ordinance Licensing and Regulating Buildings Containing Rooming Units in the City of White Plains. Consequently, the record does not reveal if there are any outstanding violations which petitioner has neither corrected nor is willing to correct within a reasonable period of time.

■ The last reason proffered by respondents for denial of petitioner's application was a finding that the rooming house would violate the applicable building code safety requirements for fireproof construction. This reason is also inadequate to support denial of petitioner's application. The ordinance requiring fireproof construction of rooming houses is inapplicable to petitioner's application, as it applies only to those rooming houses "constructed or put into operation after the date of adoption of this amendment" in 1976. The premises in question were built several decades before the fireproof construction requirement was enacted. The license to operate a rooming house by the

building's previous owner had been approved by respondents in 1978 without reference to those requirements. It is beyond question that the standards governing the granting of a license must be applied equitably to all applicants (see *Matter of G.J. & S. Pizza v McLaughlin, supra,* p 655; *Stern v Metropolitan Life Ins. Co.,* 169 App Div 217, affd 217 NY 626). Nor did petitioner's acceptance of a single-family certificate of occupancy for the premises constitute abandonment of its use as a rooming house, rendering the fire construction ordinance applicable. Petitioner's application for a single-family certificate of occupancy was made at the behest of respondents after his first application for a rooming house license was rejected. Petitioner's application for a single-family certificate of occupancy expressly states it was "filed under protest, the use of the house as a one family dwelling will not be deemed a *waiver* of rooming house use if a court or other competent body orders the issuance of a rooming house license to present owners".

In view of the errors made by respondents in interpreting and applying the standards contained in article 23-A of the Correction Law and the speculative nature of their findings and conclusions, the matter must be remitted to the Commissioner of the Department of Building. Although a formal hearing is not required, petitioner may not be refused a license based upon his prior convictions or alleged lack of good moral character unless he has had a fair opportunity to refute respondents' contention that those convictions have a direct relationship to the specific license sought, or the issuance of the license would involve an unreasonable risk to property or the safety and welfare of individuals or the general public. The procedures followed by the licensing body must conform to recognized standards of fairness and a record must be made which permits a review of its determination by the courts (see *Matter of Roosevelt Taxi v Commissioner of Public Safety of City of Yonkers,* 24 AD2d 573, 574, quoting from *Matter of Perpente v Moss,* 293 NY 325, 329, and *Matter of Elite Dairy Prods. v Ten Eyck,* 271 NY 488, 498; cf. *Carroll v Hastings,* 64 AD2d 843).

Accordingly, the judgment should be reversed, on the law, without costs or disbursements, and the matter remit-

ted to the Commissioner of Building of the City of White Plains for a hearing and new determination in accordance herewith which should include specific findings of fact based on the evidence presented.

O'CONNOR, J. P., BROWN and NIEHOFF, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated December 24, 1981, reversed, on the law, without costs or disbursements, and petition is granted to the extent that the determination of respondent Commissioner of Building is annulled, and the matter is remitted to him for a hearing and new determination based on specific findings of fact, in accordance herewith.