In the Matter of NEW YORK STATE DEPARTMENT OF MENTAL HYGIENE et al., Petitioners, v STATE DIVISION OF HUMAN RIGHTS, on Complaint of KEVIN P. CAREY, et al., Respondents.

Second Department, October 29, 1984

APPEARANCES OF COUNSEL

*Frederic Block, P. C.* (*Regina Seltzer* on the brief), for petitioners.

*Roberto Albertorio* (*Robert N. Marx* of counsel), for New York State Division of Human Rights, respondent.

OPINION OF THE COURT

TITONE, J. P.

This is a proceeding brought pursuant to section 298 of the Executive Law seeking review of an order of the New York State Human Rights Appeal Board. That order affirmed a determination of the New York State Division of Human Rights, made after a hearing, finding that petitioners had violated former subdivision 14 (now subd 16) of section 296 of the Executive Law by terminating the complainant's employment because of his refusal to furnish documentation verifying that criminal charges against him had been dismissed. The Division directed complainant's reinstatement with back pay. We conclude that, on the facts of this case, there has been no discriminatory practice and that, in any event, the remedy devised exceeds the Division's powers. Accordingly, we grant the petition, deny the cross application for enforcement, vacate the order, annul the determination, and dismiss the complaint.

Shortly before he was hired, complainant Kevin P. Carey was interviewed by two members of the petitioner Kings Park Psychiatric Center's (Kings Park) personnel committee. In the course of the discussion of his employment application, Carey admitted that he had been arrested for petit larceny and had received an adjournment in contemplation of dismissal (CPL 170.55). He had not listed this in the application because "the application asked for convicted, not arrested [*sic*]". The interviewers assured Carey that such a disposition was "nothing to worry about[;] [y]ou have the job". He was thereafter fingerprinted in accordance with the New York State Department of Civil Service procedures required of all employees, and commenced his probationary period.

The fingerprint check indicated that the petit larceny charge had not been disposed of and was, apparently, still open. In accordance with its duly promulgated rules, the New York State Department of Civil Service instructed Kings Park to direct Carey "to submit an official court transcript documenting the final disposition of the reported arrest[s]". Kings Park, in turn, notified Carey to do so.

The time within which to comply was extended, at Carey's request, because Carey desired to determine his rights under the recently enacted section of the Executive Law, which rendered it an unlawful discriminatory practice to inquire about arrests (Executive Law, § 296, subd 16, as added by L 1976, ch 877 [eff Sept. 1, 1976], as renum by L 1980, ch 689, § 2). Carey concluded that he need not comply with the directive, but never advised Kings Park of his decision.

Subsequently, Carey was terminated, within the probationary period, solely for poor attendance, according to Kings Park. He thereafter filed a complaint with the New York State Division of Human Rights.

The Commissioner found that while former subdivision 14 (now subd 16) of section 296 of the Executive Law "does not prevent a governmental agency from reporting, whether a particular individual has been convicted or is the subject of a pending criminal proceeding", Kings Park should have "asked the appropriate governmental agencies whether he had been convicted", and therefore it was unlawful to terminate Carey "for failing to furnish further information about the final disposition 'of the reported arrest'". No mention was made as to whether the termination was based solely upon Carey's failure to respond to the directive and what part, if any, Carey's unfavorable attendance record played. The Commissioner, among other things, ordered Kings Park to "re-employ" the complainant with full back pay and "all the rights, privileges, benefits, seniority and pay raises". The appeal board affirmed, in a terse memorandum. We now vacate the appeal board's order and annul the determination.

Subdivision 16 of section 296 of the Executive Law declares it to be an "unlawful discriminatory practice * * *

to make any inquiry about * * * or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual". As the legislative history and decisions make plain, the object of the legislation was "consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were. ultimately sustained in a court of law" (Memorandum of Governor Carey, McKinney's Session Laws of NY, 1976, p 2451; see *Matter of Skyline Inn Corp. v New York State Liq. Auth.,* 44 NY2d 695; cf. *Matter of Hynes v Karassik,* 47 NY2d 659, 662-663; *Matter of Marra v City of White Plains,* 96 AD2d 17). It is, however, "permissible to consider the independent evidence of the conduct leading to the criminal charges" (*Matter of Skyline Inn Corp. v New York State Liq. Auth., supra,* p 696).

The initial interview took place prior to September 1, 1976, the effective date of the statute (L 1976, ch 877, § 5). Since the provisions of the Human Rights Law may not be applied retroactively, it is clear that Kings Park's conduct in asking Carey about his arrest at the initial interview did not constitute a discriminatory practice (see *Pugach v Liggett Group,* 55 NY2d 922; *Matter of Westinghouse Elec. Corp. v State Div. of Human Rights,* 49 NY2d 234; *State Div. of Human Rights [Ghee] v County of Monroe,* 48 NY2d 727; *City of New York v Cole,* 48 NY2d 707).

Moreover, the background check by and with the New York State Department of Civil Service was also proper (Civil Service Law, § 50). The Department is statutorily mandated to "investigate the qualifications and background" of an applicant "[n]otwithstanding * * * any other law" (Civil Service Law, § 50, subd 4). Pursuant to its duly promulgated rule (4 NYCRR 3.2 [c]), which has the force of law (*Matter of Albano v Kirby,* 36 NY2d 526, 529), "[t]he burden of establishing his qualifications to the satisfaction of the Civil Service Department shall be upon the applicant. Any applicant who refuses to permit the department to investigate matters necessary for the verification of his

qualifications or who otherwise hampers, impedes or fails to cooperate with such department in such investigation shall be disqualified * * * for certification and appointment".

■ The only question, then, is whether Kings Park was precluded from requesting Carey to verify the disposition of the criminal charges against him. We think not.

Kings Park was confronted with a circumstance in which it was required to resolve an ambiguity concerning a probationary employee's criminal record — if the charge had been dismissed pursuant to CPL 170.55 (subd 2), the record would have been expunged (CPL 160.50, subds 1, 2, par [b]; *Hollender v Trump Vil. Coop.,* 58 NY2d 420, 425) — and we know of no manner in which accurate information as to a disposition can be promptly obtained other than from the employee himself (cf. *Perez v State of New York,* 75 AD2d 683). In fact, since Kings Park could have terminated Carey without giving any reason (see *Matter of Talamo v Murphy,* 38 NY2d 637; *Matter of Bonney v Dilworth,* 99 AD2d 468; cf. *Matter of Miller v Ravitch,* 60 NY2d 527), the inquiry made to him was obviously in good faith and for his protection.

We also find that the Commissioner invoked a far too literal reading of the relevant statute (see *People v Brooks,* 34 NY2d 475, 477-478). It is axiomatic that "a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers. The writers of laws do not always express their intention perfectly, but either exceed it or fall short of it, so that judges are to collect it from probable or rational * * * interpretation" (*Riggs v Palmer,* 115 NY 506, 509; see, also, *United Housing Foundation v Forman,* 421 US 837, 849, quoting *Holy Trinity Church v United States,* 143 US 457, 459; *Essenfeld Bros. v Hostetter,* 14 NY2d 47, 52; *People ex rel. Makin v Wilkins,* 22 AD2d 497, 502). This is such a case, as the Legislature never intended employers to be foreclosed from requiring verification of the disposition of criminal charges once the existence of such charges has been legally and properly discovered (cf. *Matter of Ostoyich v State of New York,* 99 AD2d 839; *Matter of Stewart v Civil Serv. Comm.,* 84 AD2d 491).

In any event, there is nothing in the record to indicate that Carey was penalized because of the criminal charge. It is obvious that the Commissioner believed that Carey's failure to supply the requested data was the cause of the termination but this is not the same thing as using an unproven charge against him. Carey had, in fact, been hired despite the arrest. Even on the Commissioner's view of the record, Carey was terminated for insubordination in failing to comply with a directive which he knew would lead to dismissal.

■ Finally, irrespective of the merits of the determination, the Commissioner lacked the power to order Carey's reinstatement since he was a probationary employee and "such a direction would in effect deprive the appointing authority of the power of selection" (*City of Schenectady v State Div. of Human Rights,* 37 NY2d 421, 430; see *Sears v New York State Div. of Human Rights,* 73 AD2d 913, mot for lv to app den 49 NY2d 705). It was also improper to award back pay "based on what [complainant] would have earned as a Therapy Aide from the date that Respondent terminated him, October 20, 1976, to the date the Complainant accepts or rejects the offer of re-employment" because such an award is " 'dependent at its terminus upon the offer of appointment' " (*Sears v New York State Div. of Human Rights, supra,* p 915, quoting from *Matter of New York City Dept. of Personnel v New York State Div. of Human Rights,* 58 AD2d 787, 788, affd 44 NY2d 904; see, also, *City of Schenectady v State Div. of Human Rights, supra,* p 430; *State Div. of Human Rights v New York State Dept. of Correctional Servs.,* 91 AD2d 832, 833; cf. *State Div. of Human Rights [Geraci] v New York State Dept. of Correctional Servs.,* 90 AD2d 51, 58).

For these reasons, the petition should be granted and the cross application for enforcement denied, without costs or disbursements.

MANGANO and O'CONNOR, JJ. (dissenting). We agree with the Commissioner that subdivision 16 of section 296 of the Executive Law prohibits an employer from inquiring of an employee as to the status of a criminal accusation, which had, in fact, been terminated in favor of the employee, even if the employer was relying in good faith upon

information that the matter was still pending. In such circumstances, there are other means by which the employer can ascertain the true current status of the charges. The Commissioner was therefore correct in holding that petitioner Kings Park Psychiatric Center had violated the Human Rights Law by terminating complainant's employment upon his failure to provide, pursuant to its request, verification of his statement as to the disposition of a particular charge, which had, in fact, been dismissed.

A review of the record in this matter reveals that the Commissioner was also correct in holding that complainant's failure to comply with his employer's directive was the reason for his termination.

Under these circumstances, the Commissioner properly directed Kings Park to offer complainant reemployment in his prior position as a mental hygiene assistant therapy aide, who was entering a 12-week extension of his probationary period (Executive Law, § 297, subd 4, par c). The monetary award, although denominated as back pay, is, in this situation, a compensatory award (see *State Div. of Human Rights [Geraci] v New York State Dept. of Correctional Servs.,* 90 AD2d 51), and is not erroneous as a matter of law (see *Matter of Mize v State Div. of Human Rights,* 33 NY2d 53).

GIBBONS and LAWRENCE, JJ., concur with TITONE, J. P.; MANGANO and O'CONNOR, JJ., dissent and vote to dismiss the petition, and grant the cross application for enforcement, with an opinion.

Petition granted, on the law, without costs or disbursements, order vacated, determination annulled, complaint dismissed, and application for enforcement denied.