PETER A. PELUSO, Petitioner, v CHARLES M. SMITH, as Commissioner of the New York City Department of Buildings, et al., Respondents.

Supreme Court, New York County, February 8, 1989

## APPEARANCES OF COUNSEL

*Hochheiser & Aronson (Kenneth J. Aronson* of counsel), for petitioner. *Peter L. Zimroth, Corporation Counsel (Michele A. Pincus* of counsel), for respondents.

## OPINION OF THE COURT

NORMAN C. RYP, J.

### A. ISSUE

*Whether a former felon, with a certificate of relief from*

*disability, is entitled to any procedural due process before a New York City municipal agency's denial of license, and to the presumption of rehabilitation under article 23-A of the Correction Law.*

In this CPLR article 78 proceeding petitioner, Peter A. Peluso, seeks from respondents, Charles M. Smith as Commissioner of the New York City Department of Buildings (NYC-D/B) and Judith A. Levitt, as Director of the Department of Personnel of the City of New York (NYC-D/P) (a) issuance of a certificate for and from the site safety manager; (b) declaring that the NYC-D/B rules concerning the issuance of certification or license for site manager are invalid and unconstitutional; (c) directing a hearing to determine whether or not he possesses the requisite qualifications as site safety manager; and (d) directing a fact-finding hearing, pursuant to CPLR 7804 (h).

## B. FACTS AND PROCEDURAL HISTORY

The unrefuted facts are as follows:

The petitioner previously worked for the NYC-D/B as a construction inspector from 1968 to 1984.

On May 3, 1984, petitioner was served with charges, under Civil Service Law § 75, listing five specifications. These five specifications claimed that, between December 28, 1983 and March 15, 1984, petitioner agreed not to list all objections against issuance of a NYC-D/B certificate of occupancy (C/O), accepted on three separate occasions ($400 each) upon an improper agreement or understanding for discretionary approval of a C/O, and dismissal of four violations covering premises No. 209A Wyckoff Street, Brooklyn, New York.

Thereafter, a disciplinary hearing was held on July 10 and 11, 1984, before a New York City Administrative Law Judge who on July 26, 1984, sustained all of the charges except specification No. 5 which was dismissed. Subsequently, on July 30, 1984, NYC-D/B Commissioner Charles M. Smith, Jr., found petitioner guilty as reflected in the Administrative Law Judge's report and recommendation and dismissed petitioner from his employment as a NYC-D/B construction inspector, effective July 30, 1984.

Later, petitioner appealed his termination to the New York City Civil Service Commission which held a hearing on April 25, 1985, and later affirmed, in its opinion dated May 3, 1985:

(1) the findings of guilt, as fully supported by the record; and (2) the determination and penalty of dismissal imposed.

As a result of these charges, then referred to the Kings County District Attorney, petitioner was arrested on May 3, 1984, and pleaded guilty before Justice Ruth Moskowitz in Supreme Court, Kings County, to bribe receiving in the second degree, for which petitioner was later sentenced, on November 12, 1986, to a five-year term of probation, $2,500 fine, and 25 hours of community service. As a result of these charges, petitioner was terminated, effective July 30, 1984, as a NYC-D/B employee.

Since December 9, 1985, petitioner has been employed by Inspeco, Inc., of 47 Hudson Street, Ossining, New York, as a site safety coordinator. On December 10, 1985, petitioner was designated as the site safety coordinator for the construction project at One Union Square East in Manhattan.

Thereafter, on September 23, 1986, the NYC-D/B duly promulgated new rules and regulations, effective November 1, 1986 (see, NY City Record, Sept. 25, 1986), requiring site safety manager be duly licensed by the NYC-D/P as of October 1, 1987, later postponed to May 1, 1988 owing to a shortage of qualified applicants. To qualify for a license the applicant must have certain experience and pass a written examination prepared by the NYC-D/P.

On January 10, 1987, petitioner participated in, and by letter dated February 19, 1987, was informed he passed an examination for site safety manager.

On December 15, 1987, to facilitate the issuance of site safety manage license, petitioner applied to his sentencing Justice, the Honorable Ruth Moskowitz, for a certificate of relief from disabilities. On January 29, 1988, Justice Moskowitz issued petitioner said certificate of relief, "of all disabilities and bars to employment, excluding the right to be eligible for public office."

Thereafter, by notice of personnel director action dated March 10, 1988, petitioner was informed that he had been found "Not Qualified" for a "position" or certificate for site safety manager for: "fitness, character, soliciting and receiving a bribe and unsatisfactory prior public employment." There was no hearing or reference to petitioner's certificate of relief from disabilities or consideration of the requirements of Correction Law § 752 or § 753.

By letter dated April 8, 1988, petitioner appealed the denial of his application, without any written response from the New York City Civil Service Commission, Department of Buildings or Department of Personnel. The only response was by NYC-D/P's Michael Rubin, its counsel, and Ernest Cook, its assistant administrator, previously informing petitioner's counsel that no administrative appeal would be afforded petitioner herein with his only recourse to commence this CPLR article 78 proceeding in this court, which petitioner initiated on June 8, 1988.

### C. PARTIES' CONTENTIONS

In support, petitioner contends (a) that the NYC-D/P improperly denied his application for certification, necessary to retain his current position of site safety coordinator, by refusing a hearing or other adequate opportunity to refute the alleged disqualification basis; (b) the March 10, 1988 notice of the NYC-D/P was arbitrary, capricious and an abuse of discretion by having "no relevant connection" between the license disqualification reason(s) and the site safety manager job qualifications; and (c) respondents have exceeded their authority to require a license for site safety manager. Petitioner further points out the inequity and hardship of being a combat-decorated Korean War veteran, responsible and long (20 years)-married husband and father, with 4 children (3 natural and 1 adopted, with a serious learning disability) and a wife with leukemia since 1983, with presumably good fitness and character and, other than this single incident, had an exemplary record, including several commendations for superior job performance during his 17 years with the NYC-D/B.

In opposition, respondent submits that the new NYC-D/B regulations were lawfully promulgated, pursuant to section 1105 (b) of the New York City Charter. Respondent further argues that petitioner's application denial was neither arbitrary nor capricious because petitioner's conviction for bribe receiving has a "direct relationship" to the applied-for license which would be an "unreasonable risk" to persons or property, thus meeting both exceptions in Correction Law § 752 (1) and (2). Finally, respondent contends that petitioner had no property interest in the new license, therefore, due process did not attach, and thus was not entitled to either a hearing or procedural due process.

### D. LAW AND APPLICATION

### 1. *Agency Rule-Making Authority*

It is clear the head of an agency, such as the NYC-D/B, is authorized to make or promulgate rules and regulations for the conduct of his or her office or agency and to carry out its powers and duties. *(See,* NY City Charter § 1105 [b].)

The NYC-D/B's duties include: the enforcement of the New York City Building Code *(see,* NY City Charter § 643), with the purpose of providing reasonable minimum requirements and standards for the regulation of New York City building construction in the interest of public safety, health and welfare. *(See,* Administrative Code of City of New York § 27-102.) This includes license requirement(s). *(Matter of Reingold v Koch,* 111 AD2d 688 [1st Dept 1985], *affd* 66 NY2d 994 [1985].)

Thus, petitioner's contention that respondent NYC-D/B exceeded its authority by requiring a license for site safety manager is meritless.

### 2. *Procedural Due Process*

Petitioner states that he has not been afforded a hearing to contest the denial of his application. Respondent claims that because this was a license application there was no due process right to an evidentiary hearing. *(Matter of Lock v New York State Educ. Dept.,* 102 AD2d 979 [3d Dept 1984], *lv denied* 64 NY2d 604; *Matter of Wright v New York State Educ. Dept.,* 128 AD2d 989 [3d Dept 1987]; *Matter of Horoshko v Ambach,* 122 AD2d 447 [3d Dept 1986].) The cases respondent cites, however, are factually and legally distinguishable because each deals with a New York State agency, while this case concerns the NYC-D/P; and none of the citations, contrary to subject case, involve the presumption of rehabilitation, certificates of relief from disabilities and exceptions under Correction Law § 752. No reasons were given following petitioner's March 10, 1988 license denial, except for conclusory allegations set forth in respondents' August 4, 1988 verified answer, which are no substitute for a fact-finding determination, if not a hearing with procedural due process including the right to confront and cross-examine witnesses and affording a reasonable opportunity to present supportive evidence and witnesses to negate both Correction Law § 752 (1) and (2) exceptions. In *Reingold v Koch (supra)* the court ordered an evidentiary hearing where the NYC-D/P denied a

master plumber's license on the basis of the applicant's alleged lack of the requisite years of experience as a plumber even though the applicant had passed the written examination. In the most recent landmark New York Court of Appeals decision *(Matter of Bonacorsa v Van Lindt,* 71 NY2d 605 [1988]), there was an evidentiary hearing by a Hearing Officer before the license denial. *(See, Bonacorsa v Van Lindt,* 129 AD2d 518, 519 [1st Dept 1987].)

The purpose of Correction Law article 23-A (§§ 750-755) ("Licensure and Employment of Persons Previously Convicted of One or More Criminal Offenses" [L 1976, ch 931, eff Jan. 1, 1977]) was not to give ex-convicts preferred treatment; but to try to remove prejudice against former criminals obtaining jobs or licenses. Such prejudice, according to research, was not only widespread but unfair and counterproductive. While offenders were encouraged upon release from prison as part of their rehabilitation to find employment, their criminal records caused great difficulty though there was no connection between the job or license and the crime committed, its circumstances or the offender's background. *(See,* Meltsner, Caplan and Lane, *An Act to Promote the Rehabilitation of* Criminal Offenders in the State of New York, 24 Syracuse L Rev 885, 905 [1973].) Failure to find employment resulted in personal frustration, injured society as a whole, and contributed to a high rate of recidivism *(see,* 1976 NY Legis Ann, at 50); "the key to reducing crime is a reduction in recidivism," which this law (Correction Law art 23-A) would encourage but "in no way requires the hiring of former offenders" *(see,* Gov Hugh L. Carey's approval mem, July 27, 1976, 1976 McKinney's Session Laws of NY, at 2458; 1976 NY Legis Ann, at 417).

Thus, Correction Law article 23-A sought to reduce, if not remove, this employment obstacle by obliging employers and public agencies to deal equitably with ex-offenders while protecting society's interest in assuring job performance by reliable and trustworthy persons. To do so, Correction Law § 752 sets out a broad general rule that bars employers and public agencies from denying employment or a license solely based on ex-offender status. However, this statute recognizes two exceptions where there also has been a determination that: "(1) there is a direct relationship between * * * the criminal offense * * * and the specific license or employment sought" (Correction Law § 752 [1] [under Correction Law § 750 (3), "direct relationship" is defined as where the "nature of criminal

conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the license or employment sought"]; *see also,* Correction Law § 753); and (2) the license or employment sought involves an "unreasonable risk to persons or property" (Correction Law § 752 [2]). There is no statutory definition of "unreasonable risk" since such a finding clearly depends upon a subject analysis of various considerations relating to the nature of the license or employment sought and the prior misconduct.

The purpose of this 1976 legislation was not to give ex-criminals preferred treatment, nor to cloak their prior record in secrecy, but to create reasonable standards to be applied by public agencies when considering applications by former offenders *(Matter of Stewart v New York City Civ. Serv. Commn.,* 84 AD2d 491, 494 [1st Dept 1982]).

The presumption of rehabilitation created by the certificate of relief from disabilities dated January 29, 1988 applies even where the statutory definition of "direct relationship" (Correction Law § 750 [3]) has been satisfied. Thus the licensing agency or employer must consider the eight factors listed in Correction Law § 753 (1) (a)-(h) to determine whether, in fact, the "direct relationship" is sufficiently attenuated to warrant issuance of the license *(see, Matter of Marra v City of White Plains,* 96 AD2d 17, 23 [2d Dept 1983]; 1985 Opns Atty Gen 14). While the licensing agency is not required to conduct a public hearing, such may only deny a license after making the determinations required by the Legislature, under Correction Law § 752, after mandatory consideration of the eight factors under Correction Law § 753 (1) (a)-(h) (1984 Atty Gen [Inf Opns] 126).

If the agency considers *all* eight factors listed in Correction Law § 753 (1), it need not in every case produce independent evidence to rebut the presumption of rehabilitation before denying a license. In some cases, consideration of other factors such as the severity of the criminal offense(s), the passage of time (between the offenses and the application) and the nature of the license sought, can warrant denial of the license despite the absence of new specific evidence directed at overcoming the presumption of rehabilitation. In other cases, the failure of the agency to rebut the presumption of rehabilitation with evidence suggesting no rehabilitation will result in an arbitrary and capricious determination *(Matter of Bonacorsa v Van Lindt,* 71 NY2d 605, 614, *supra).*

In the case at bar, the issuance of a certificate of relief from disabilities created a presumption of rehabilitation which the respondent must rebut. In *Bonacorsa v Van Lindt (supra)*, the court found that even if there was "a direct relationship" between the crime(s) and the license sought by the owner-trainer-driver of harness racehorses, the presumption of rehabilitation is an important factor in determining whether the license will be granted. However, the factors in Correction Law § 753 must also be examined and considered well as used to rebut the presumption of rehabilitation.

Respondent denied petitioner's application on the basis of petitioner's prior conviction but did not give any evidentiary findings as the bases of its factual determination(s) to rebut the presumption of rehabilitation created by subject certificate of relief from disabilities. Notwithstanding the loss of his livelihood, if not the destruction of a 20-year career in construction, a combat-decorated war veteran and devoted family husband and father only received a notice from the New York City Department of Personnel that he was not qualified because of "fitness, character, soliciting and receiving a bribe and unsatisfactory prior public employment." Therefore, petitioner is entitled to a fact-finding evidentiary hearing under CPLR 7804 (h), to examine the eight factors set forth in Correction Law § 753 with regard to the presumption of rehabilitation created by his certificate of relief from disabilities.

### E. CONCLUSION

For the foregoing reasons, petitioner's CPLR article 78 and declaratory judgment action is granted only to the extent of directing respondent, NYC-D/P, to hold a fact-finding evidentiary hearing under CPLR 7804 (h) to examine, apply and determine the applicability of the factors set forth in Correction Law § 753 in relation to petitioner's presumption of rehabilitation created by the certificate of relief from disabilities; otherwise denied, without prejudice.