OPINION OF THE COURT
Simons, J.
Petitioner, Joseph Bonacorsa, was formerly licensed as an owner-trainer-driver of harness race horses. In 1974 his license was revoked because he was convicted of Federal crimes. This article 78 proceeding challenges the Racing and Wagering Board’s denial of an application he made for a new license in 1985. Defendant appeals from an order of the Appellate Division which dismissed his petition, contending that the Board’s action violated article 23-A of the Correction Law (§§ 750-755) which prohibits a public agency from denying a license because of the applicant’s prior criminal record or lack of good moral character when such finding is based upon the fact that the applicant has been convicted of criminal offenses. He notes that he has received a certificate of good conduct from the State Board of Parole and that he is, therefore, entitled to a presumption of rehabilitation. The Board contends that its action was authorized by an exception to the statute permitting denial in cases in which there is a direct relationship between petitioner’s convictions and the license he seeks (Correction Law § 752 [1]).
 Disposition of the appeal requires us to interpret the provisions of Correction Law § 753,[1] as they apply to *609 section 752. Specifically, we must determine whether the presumption of rehabilitation accorded a certificate of good conduct or a certificate of relief from civil disabilities by section 753 (2) applies when the public agency or private employer denies an application on the ground that there is a direct relationship between the criminal conviction and the license or employment sought, and if so, whether, notwithstanding any presumption of rehabilitation, the public agency or private employer still has discretion to deny the application after examining the eight factors contained in section 753 (1). We answer both questions in the affirmative and conclude that the Board did not abuse its discretion in denying petitioner’s application.
I
In 1973, a Federal Grand Jury was investigating corruption in the sport of harness racing and particularly the activities of Forrest Gerry, Jr. Gerry had been barred from harness racing previously for allegedly leading a conspiracy to fix races at Yonkers Raceway and Roosevelt Raceway. Petitioner was a witness before the Grand Jury and as a result of his testimony he was charged with falsely testifying that a certain race horse was owned by his wife, when in fact the horse was owned by Gerry, and with soliciting another horse trainer, Steven Rubin, to testify falsely that he (Rubin) had sold a horse to petitioner’s wife when the sale had actually been made to Gerry (see generally, United States v Gerry, 515 F2d *610 130, cert denied 423 US 832; United States v Turcotte, 515 F2d 145, cert denied sub nom. Gerry v United States 423 US 1032). After trial, petitioner was convicted of one count of making a false declaration to a Federal Grand Jury investigating race fixing, in violation of 18 USC § 1623, and one count of obstructing justice before the same Grand Jury, in violation of 18 USC § 1503, and sentenced to two years’ imprisonment (see, United States v Bonacorsa, 528 F2d 1218, cert denied 426 US 935).
In 1977 petitioner completed his sentence and since then he has made several unsuccessful efforts to regain his license. On February 21, 1985 petitioner, after receiving a certificate of good conduct from the New York State Board of Parole,[2] once again applied for a license and a hearing was held to consider his application. The Hearing Officer recommended denial, the Board confirmed his determination and petitioner instituted this article 78 proceeding to set aside its décision.
Supreme Court granted the petition, annulled the order and remitted the matter to the Board for further consideration and new findings of fact. It held that the provisions of section 753 (2) entitled petitioner to a presumption of rehabilitation because he possessed a certificate of good conduct even when, as here, the convictions had a direct relationship with the license sought to be obtained. It held further that the presumption of rehabilitation established a prima facie right to the license and that the presumption had not been overcome in this case because the Board had failed to offer any evidence to rebut it.
The Appellate Division unanimously reversed and dismissed the petition. Three Justices reasoned that the presumption of rehabilitation which derives from the certificate of good conduct does not apply when there is a direct relationship between the conviction and the license or employment sought or where there is an unreasonable risk to the safety or welfare of the public. Justice Sandler concurred in the result concluding that although a certificate of good conduct or a certificate of relief from civil disabilities "would appear to be relevant” to *611 the unreasonable risk exception found in Correction Law § 752 (2), "[i]t is not easy to see how a presumption of rehabilitation on the part of an applicant is relevant to whether or not there is a direct relationship between the applicant’s prior conviction and the specific license or employment sought” (129 AD2d, at 522).
We granted petitioner leave to appeal.
II
Article 23-A of the Correction Law was enacted in 1976 in an attempt to eliminate the effect of bias against ex-offenders which prevented them from obtaining employment. Studies established that the bias against employing or licensing ex-offenders was not only widespread but particularly unfair and counterproductive. Although ex-offenders were urged when released from prison to find employment as a part of their rehabilitation, they had great difficulty in doing so because of their criminal records and this difficulty existed even though there was an absence of any connection between the employment or license and the crime committed, its circumstances or the background of the offender (see, Meltsner, Caplan & Lane, An Act to Promote the Rehabilitation of Criminal Offenders in the State of New York, 24 Syracuse L Rev 885, 905). Failure to find employment not only resulted in personal frustration but also injured society as a whole by contributing to a high rate of recidivism (see, 1976 NY Legis Ann, at 50).
Article 23-A sought to remove this obstacle to employment by imposing an obligation on employers and public agencies to deal equitably with ex-offenders while also protecting society’s interest in assuring performance by reliable and trustworthy persons. Thus, the statute sets out a broad general rule that employers and public agencies cannot deny employment or a license to an applicant solely based on status as an ex-offender. But the statute recognizes exceptions either where there is a direct relationship between the criminal offense and the specific license or employment sought (Correction Law § 752 [1]), or where the license or employment would involve an unreasonable risk to persons or property (Correction Law § 752 [2]). If either exception applies, the employer has discretion to deny the license or employment. The statute defines a "direct relationship” as one in which the "nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the *612 duties or responsibilities necessarily related to the license or employment sought” (Correction Law § 750 [3]). It contains no similar definition of "unreasonable risk” for the obvious reason that a finding of unreasonable risk depends upon a subjective analysis of a variety of considerations relating to the nature of the license or employment sought and the prior misconduct.
Petitioner does not dispute that the direct relationship exception is applicable here. The question presented is the effect the certificate of good conduct has on his ability to receive a license, notwithstanding the existence of that direct relationship.
Petitioner asserts that the presumption of rehabilitation applies even where there is a direct relationship between the crime and the license sought, that it creates a prima facie entitlement to the license, and that his prima facie right to a license has not been adequately rebutted by the Board. Respondent claims that because petitioner was convicted of crimes directly relating to the racing industry, the certificate of good conduct does not create a presumption of rehabilitation. Alternatively, it urges that denial of the license was in any event not arbitrary or capricious because it retained discretion to deny the license after considering the eight factors contained in Correction Law § 753 (1).
We agree with petitioner that the presumption of rehabilitation created by the certificate of good conduct applies even when the statutory definition of direct relationship hits been satisfied. Because it does, the agency or employer must consider the factors mentioned in section 753 (1) to determine whether in fact the direct relationship is sufficiently attenuated to warrant issuance of the license (see, Matter of Marra v City of White Plains, 96 AD2d 17, 23). It appears that the Attorney-General accepted this interpretation of the statutes when previously considering the question (see, 1985 Opns Atty Gen No. 85-F2, at 14). After stating the general rule, he noted: "Consideration must be given to a certificate of relief from disabilities or a certificate of good conduct issued to the applicant, which creates a presumption of rehabilitation in regard to the offenses covered by these certificates” (id., at 16, n).
The correctness of this statutory interpretation seems inescapable. Correction Law § 752 states unambiguously that in the absence of direct relationship or unreasonable risk, a *613 conviction cannot be considered as a basis for denying a license or employment, whether or not the applicant has a certificate of relief from civil disabilities or a certificate of good conduct. Thus, the provisions of section 753 are of no consequence unless they either help determine if one of the two exceptions applies or, alternatively, aid the agency or employer in exercising its discretion to grant the license after it has been found that one does apply. If the presumption of rehabilitation contained in Correction Law § 753 (2) is to be given any meaning, the certificate must necessarily be considered where the direct relationship exception applies, though the public agency or private employer still retains discretion to deny the application, because the certificate is not necessary to obtain the benefits of the statute in cases which are not within the exception.
The interplay of the two exceptions and section 753 (1) is awkward, but to give full meaning to the provisions, as we must, it is necessary to interpret section 753 differently depending on whether the agency or private employer is seeking to deny the license or employment pursuant to the direct relationship exception (§ 752 [1]) or the unreasonable risk exception (§ 752 [2]). Undoubtedly, when the employer or agency relies on the unreasonable risk exception, the eight factors contained in section 753 (1) should be considered and applied to determine if in fact an unreasonable risk exists. The employer or agency may not assume that the exception applies and then consider the factors to determine whether the employment should be offered or the license should nevertheless be granted. Having considered the eight factors and determined that an unreasonable risk exists, however, the employer or agency need not go further and consider the same factors to determine whether the license or employment opportunity should be granted. Thus, when applied to subdivision (2) of section 752, the phrase "[i]n making a determination pursuant to section seven hundred fifty two” means in determining whether the unreasonable risk exception actually applies.
Section 753 must also be applied to the direct relationship exception because the prefatory language of section 753 (1) and (2), properly construed, specifies that the section shall apply to all parts of section 752. When considering the effect of section 753 on the direct relationship exception, however, a different analysis is required because "direct relationship” is defined by section 750 (3), and because consideration of the *614 factors contained in section 753 (1) does not contribute to determining whether a direct relationship exists. We read the direction of section 753 that it applies "[i]n making a determination pursuant to section seven hundred fifty-two” to mean that, notwithstanding the existence of a direct relationship, an agency or private employer must consider the factors contained in section 753, to determine whether employment or a license should, in its discretion, issue.
The presumption of rehabilitation which derives from a certificate of good conduct or certificate of relief from civil disabilities, has the same effect, however, whether the employer or agency seeks to deny the application pursuant to the direct relationship exception or the unreasonable risk exception. In neither case does the certificate establish a prima facie entitlement to the license or employment. It creates only a presumption of rehabilitation, and although rehabilitation is an important factor to be considered by the agency or employer in determining whether the license or employment should be granted (see, Correction Law 753 [1] [g]), it is only 1 of 8 factors to be considered.
If the employer or agency considers all eight factors listed in section 753 (1), it need not in every case produce independent evidence to rebut the presumption of rehabilitation before denying a license or employment. In some cases, consideration of other factors such as severity of the criminal offenses, the age of the offender at the time of the offenses, the passage of time between the offenses and the application, and the nature of the license or employment sought can warrant denial of the license notwithstanding the absence of new evidence specifically addressed at overcoming the presumption of rehabilitation. In other cases failure of the agency or employer to rebut the presumption of rehabilitation with evidence suggesting that there has been no rehabilitation will result in an arbitrary and capricious determination.
Ill
Based on the record before us, however, the Racing and Wagering Board’s determination was not arbitrary or capricious.
The Hearing Officer's report, adopted by the Racing and Wagering Board, considered the other factors contained in section 753 (1) to determine whether the direct relationship between petitioner’s convictions and the license sought had been attenuated sufficiently. In petitioner’s favor, the Hearing *615 Officer considered the general policy of the State to consider the licensure and employment of persons previously convicted of criminal offenses (Correction Law § 753 [1] [a]) and noted that several years had elapsed since the occurrence of petitioner’s convictions (§ 753 [1] [d]). He weighed against these factors, however, the fact that petitioner was not an inexperienced juvenile at the time of his crimes but a man in his fifties who had been licensed as an owner-trainer-driver for over 20 years, that he knew that Forrest Gerry had been denied a racing license for a number of years and that by aiding Gerry he was not only committing Federal crimes but also violating the Rules of the Racing and Wagering Board. He also considered the seriousness of petitioner’s two criminal offenses (Correction Law § 753 [1] [f]), both felonies carrying a maximum sentence of five years’ imprisonment and a $5,000 fine. While the weight that the Hearing Officer gave to these factors had to be measured in light of the certificate of good conduct and its attendant presumption of rehabilitation, it was not improper for him to consider them.
More importantly, the Hearing Officer considered the legitimate interest of the Board in protecting the safety and welfare of the general public not only because the statute requires it (§ 753 [1] [h]) but because the safety and welfare of the public is a factor particularly relevant in this case. Horse racing is the only sport in this State in which betting is legal and, therefore, has traditionally been heavily regulated (see, Matter of Casse v New York State Racing & Wagering Bd., 70 NY2d 589, 596; Barry v Barchi, 443 US 55, 64). Denial of a license to an individual involved in a scheme to cover up for another who he knew had been barred from horse racing is a legitimate means of preventing the "appearance or the fact of impropriety” in the sport (Matter of Tappis v New York State Racing & Wagering Bd., 36 NY2d 862, 864). Based upon this record, the Racing and Wagering Board did not abuse its discretion in denying the application and did not discriminate against petitioner solely because he had been convicted of criminal offenses.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. Section 753 provides:
"(1). In making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall consider the following factors:
"(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
"(b) The specific duties and responsibilities necessarily related to the license or employment sought.
*609 "(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
"(d) The time which has elapsed since the occurrence of the criminal offense or offenses.
"(e) The age of the person at the time of occurrence of the criminal offense or offenses.
"(f) The seriousness of the offense or offenses.
"(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
"(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.
"(2). In making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall also give consideration to a certificate of relief from disabilities or a certificate of good conduct issued to the applicant, which certificate shall create a presumption of rehabilitation in regard to the offense or offenses specified therein.”

. A certificate of good conduct may be issued by the State Board of Parole when the Board is satisfied that (a) the applicant has conducted himself or herself in a manner warranting the issuance for a specified period of years — the length dependent upon the seriousness of the crime, (b) the relief granted is consistent with the rehabilitation of the applicant and (c) the relief granted is consistent with the public interest (Correction Law § 703-b).