Eduardo SOTO–LOPEZ and Eliezer Baez–Hernandez, Plaintiffs,

v.

NEW YORK CITY CIVIL SERVICE COMMISSION; New York City Department of Personnel; and Mark Lebow, individually and as Chairman of the New York City Civil Service Commission; and Juan Ortiz, individually and as Director of the New York City Department of Personnel, Defendants,

and

The Attorney General of the State of New York, Defendant–Intervenor.

No. 83 Civ. 1370 (RO).

United States District Court, S.D. New York.

May 17, 1989.

Puerto Rican Legal Defense & Education Fund, Inc., New York City, for plaintiff Eduardo Soto–Lopez; Kenneth Kimerling, of counsel.

New York City Law Dept., Office of the Corp. Counsel, New York City, for New York City defendants; Vincent D'Orazio, of counsel.

## MEMORANDUM AND ORDER

OWEN, District Judge:

Plaintiff's claim arises out of a denial of veterans' preference credits on a civil service examination based on nonresident status, which the Second Circuit found to be unconstitutional, *see Soto–Lopez v. New York City Civil Service Commission*, 840 F.2d 162, 171 (2d Cir.1988). On remand, this Court's task is to determine whether plaintiff Soto–Lopez was entitled to be appointed to a housing caretaker position with the New York City Housing Authority once he received the veterans' credits previously denied; if plaintiff were so entitled,

the Second Circuit then directed the Court to decide plaintiff's claim for backpay. The claim was referred to Magistrate Dolinger to report his recommendation to this Court. In a Report and Recommendation dated January 13, 1989, Magistrate Dolinger concluded that judgment be entered in favor of plaintiff against defendant Juan Ortiz, in his official capacity as Director of the Department of Personnel, for one year's lost wages and prejudgment interest. The one year figure represents an estimate of the period of time between plaintiff's placement on the payroll after receiving veterans' credits and the time the Department of Personnel would have made a determination to discontinue plaintiff's employment due to unfitness as a result of his manslaughter conviction. Soto–Lopez filed objections to the Magistrate's Report and Recommendation, arguing that a finding of unfitness based on his criminal record would have been unlawful under N.Y. Correction Law § 752 (McKinney 1987).[1]

■ In conducting *de novo* review of Magistrate Dolinger's findings on the lawfulness of denying this position to plaintiff based on his criminal past, I conclude that such denial would have been unlawful based solely on the manslaughter conviction. N.Y. Correction Law § 753(1)(a) states that it is "the public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses." However, the state may deny an ex-offender's application for employment if there is either a "direct relationship" between the previous criminal offense and the employment sought, § 752(1), or if granting the application for employment "would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." § 752(2). *See also* § 753(1)(b)–(h) (listing factors to be considered in granting or denying employment applications of ex-offenders).

Plaintiff was convicted of manslaughter in 1973, at which time he had no prior criminal history. He has been employed during and since his period of parole for this offense. In 1984, plaintiff was arrested for criminal possession of a narcotic drug with intent to sell and for criminal possession of a controlled substance; he was sentenced to a three-year probation term following a guilty plea in February of 1984. His 1982 application for and subsequent rejection from a housing caretaker position gave rise to this action in 1983. In 1985, he applied for this position once again, this time failing to list either of his convictions on his employment questionnaire. The Civil Service Commission, in affirming the Personnel Director's determination of ineligibility, stated that he was not qualified for the position due to his insufficient demonstration of rehabilitation and misstatements on his application form.

A job description of the housing caretaker position at issue lists as typical tasks sweeping and mopping public building spaces; spreading sand and salt; washing windows; changing light bulbs; gardening; and garbage collecting in public housing projects. Magistrate Dolinger accepted defendants' view that such activities would place Soto–Lopez in areas in which crime and violence frequently occur; therefore, given his criminal history, defendants could justifiably refuse to place him in a caretaker position. However, I cannot quite accept this view that the tasks involved in this position are either "directly related" to a manslaughter conviction or present an unreasonable risk to persons or property, see § 752.

"Direct relationship" is defined in § 750(3) as one in which the "nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the license or employment sought."

---

1. The Magistrate's Report and Recommendation states that Soto–Lopez failed his civil service examination for the housing caretaker position. Both plaintiff and defendants state that this is incorrect and that plaintiff passed the examination. The Report and Recommendation is hereby corrected to reflect plaintiff's passing score. This change, however, has no substantive impact on the discussion that follows.

Since the housing caretaker position, unlike a correction officer position, for example, would not as such involve plaintiff in violent confrontations and obviously does not require plaintiff to carry arms, his fitness to perform these duties is not implicated. In assessing whether plaintiff's placement as a housing caretaker involves "unreasonable risk" under the eight factors listed in § 753, *see Bonacorsa v. Van Lindt*, 71 N.Y.2d 605, 611–14, 528 N.Y.S.2d 519, 522–23, 523 N.E.2d 806, 809–10 (1988), the defendants would be exceeding their discretion in concluding that such unreasonable risk existed. Weighing the public policy in favor of employing ex-offenders against the other factors as the statute requires, I find that the specific duties and responsibilities are not "necessarily related to the license or employment sought." In 1982, at the time plaintiff applied for the housing caretaker position, he had completed probation and his manslaughter conviction was approximately nine years old. Accordingly, I conclude that the city's refusal to hire him at this time would have been unlawful.

■■■ However, under N.Y.Civ.Serv.L. § 50(4) (McKinney 1983), the Personnel Director may investigate an employee's background and, under appropriate circumstances, may direct that employment be terminated. Assuming that plaintiff would have been appointed to the housing caretaker position in 1982, his 1984 plea to possession of narcotics with intent to sell occurred during his three-year probationary period. While recognizing the post hoc analysis required here, I conclude that the Personnel Director, who testified before the magistrate as to plaintiff's unfitness ab initio, would doubtless have decided to terminate plaintiff's employment after investigation of the additional charge involving drugs in 1984, and this result would have been consistent with the risk analysis set forth in N.Y.Correction Law § 752(2).

In support of this view, I note that the Civil Service Commission reached this very result after reviewing plaintiff's second application for the housing caretaker position in 1985, basing its refusal to appoint him on his multiple conviction record, falsification on his employment form and an insufficient demonstration of rehabilitation. Even if the falsification basis is disregarded,[2] the Civil Service Commission's opinion and the magistrate's Report and Recommendation addressed his insufficient demonstration of rehabilitation after hearing his testimony; the magistrate stressed his "fail[ure] to convey the impression that he clearly and unambiguously recognized his criminal conduct to have been entirely unacceptable, and that he was fully reformed." Report and Recommendation at 43; *see also* Defendant's Exhibit E, Civil Service Commission opinion at 2 ("Despite a jury finding of guilt in the first instance and a plea of guilty in the second instance, Mr. Soto still maintains he was acting in self-defense; as to the drug offense, he maintains that he was not in possession of any narcotics."). Against this background it would have been well within the discretion of the Department of Personnel, and later the Civil Service Commission, to conclude that plaintiff's criminal involvement in both drugs and violence, combined with his apparent lack of rehabilitation, posed an unacceptable risk to individuals residing in the housing projects in which plaintiff would be employed. Accordingly, it would have been appropriate to terminate his employment after his 1984 plea.[3]

Assuming that plaintiff would have remained on the payroll until an adverse determination by the Personnel Department, and accepting the magistrate's finding

2. The Court accepts Magistrate Dolinger's conclusion that plaintiff's 1985 concealment of his criminal record "may well have been motivated in part, as he testified, by his desperation about his son's medical condition and quite possibly by his frustration at being denied a position in 1982." Report and Recommendation at 34. The magistrate also noted plaintiff's uncontradicted testimony that in 1982, when interviewed after taking the civil service test, he disclosed his manslaughter conviction to the interviewer. *Id.* at 34–35.

3. *Cf.* the Civil Service Commission's findings in the Gariti case, discussed at length in the Report and Recommendation at 40–44; I agree with the magistrate's conclusion that plaintiff's case is distinguishable for the reasons noted therein.

that, on average, this process takes approximately one year, see Report and Recommendation at 44, I conclude that he is entitled to damages for a two-year period beginning on February 14, 1983, and ending on February 14, 1985. The former date represents the time at which he would have been placed on the payroll if given the veteran's preference, and the latter represents the one-year period during which he would have remained on the payroll pending the results of a 1984 inquiry by the Personnel Department. In addition, plaintiff is awarded prejudgment interest for this period according to the guidelines set forth in the Report and Recommendation at 46–48.

The Magistrate's Report and Recommendation is therefore modified to reflect these findings on plaintiff's appointment in 1982 and his damages. It is also modified to reflect the fact that plaintiff received a passing score on the civil service examination, see footnote 1. In all other respects, the Report and Recommendation is made the order of this Court.

So ordered.