■ In the Matter of JOSE L. ARROCHA, Respondent, v BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Appellants. [677 NYS2d 584] —In a proceeding pursuant to CPLR article 78 to review a determination of the respondent Board of Education of the City of New York, dated September 17, 1996, denying the petitioner's application for a teaching license, the appeal is from a judgment of the Supreme Court, Kings County (Jackson, J.), dated June 3, 1997, which granted the petition, annulled the determination, and ordered the Board of Education of the City of New York to grant the petitioner a teaching license.

Ordered that the judgment is affirmed, with costs.

The background facts underlying the instant proceeding have been accurately set forth in the dissent and need not be repeated.

The certificate of relief from disabilities obtained by the petitioner created a "presumption of rehabilitation in regard to the offense * * * specified therein" (Correction Law § 753 [2]; see also, Matter of Bonacorsa v Van Lindt, 71 NY2d 605, 614). This presumption was further strengthened by other extensive evidence of rehabilitation submitted by the petitioner to the Board of Education of the City of New York (hereinafter the Board) including, inter alia, his impressive educational achievement, including his completion of a Masters Degree in Spanish, his unblemished employment record as a student tutor, and several letters of recommendation from administrators in the field of education. Under these circumstances, it was incumbent upon the Board to rebut this presumption of rehabilitation by reviewing the eight factors set forth in Correction Law § 753 (1), and making a rational determination, based upon that review, that the petitioner posed "an unreasonable risk to property or to the safety or welfare" of the student population and Board of Education employees (Correction Law § 752 [2]; see also, Matter of Bonacorsa v Van Lindt, supra). Although the Board ostensibly reviewed the eight factors set forth in Correction Law § 753 (1), the record indicates that it essentially denied a license to the petitioner on the ground that the particular crime committed by the petitioner, i.e., an isolated incident of criminal sale of $10 worth of cocaine committed almost 10 years prior to his application for a teaching license, made him unfit to perform the duties and responsibilities of a high school teacher, "a position of extreme trust". In making that determination, the Board virtually ignored the

petitioner's extensive and unblemished record as a student tutor. The dissent essentially excuses the Board's omission in this regard by merely noting that the petitioner's current employment is primarily with students in the Community College system and concluding, without any foundation, that these students "are presumably less impressionable" than high school students. Of even greater significance is the Board's failure to attach any importance to the petitioner's unblemished record as a tutor for the Brooklyn College Talent Search Program, a program which provides academic preparation, career planning, and tutorial services to high school and junior high school students.

Under these circumstances, the Supreme Court properly concluded that the Board's determination that the petitioner posed an unreasonable risk to the safety and welfare of the student population and Board of Education employees was arbitrary and capricious. Mangano, P. J., Miller and Friedmann, JJ., concur.

Copertino, J., dissents and votes to reverse the judgment appealed from and dismiss the proceeding, with the following memorandum, with which Sullivan, J., concurs: The majority concludes that the Supreme Court properly granted the petition to annul the determination of the Board denying the petitioner's application for a pedagogical license. Because I am of the view that the Supreme Court improperly substituted its own judgment for that of the Board, I respectfully dissent.

In 1987, at age 35, the petitioner was convicted of criminal sale of a controlled substance in the third degree, and sentenced to an indeterminate term of imprisonment. Approximately nine years later, the petitioner applied to the Board for a pedagogical license. The petitioner disclosed his criminal record and, in a confidential attachment, explained the circumstances surrounding his conviction.

After a personal interview with the Board's Office of Personnel Investigation at which the petitioner provided a copy of a certificate of relief from civil disabilities, the petitioner provided the Board with five letters of recommendation. The Office of Personnel Investigation subsequently advised the petitioner that his license application was denied because granting him employment "would pose a risk to the safety and welfare of the student population and Board of Education employees". Thereafter, the petitioner commenced this proceeding pursuant to CPLR article 78 to review the Board's determination, based on the allegation that the Board's determination was arbitrary and capricious and in violation of Correction Law article 23-A.

Correction Law § 752 provides, in essence, that no application for any license or employment shall be denied by reason of the applicant having been previously convicted of a criminal offense unless (1) there is a direct relationship between the previous criminal offense and the specific license or employment sought, or (2) the issuance of the license or the granting of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public. Where, as here, it is claimed that the issuance of the license would involve an unreasonable risk to the safety or welfare of specific individuals (*see,* Correction Law § 752 [2]), the agency in question must consider eight specific factors in determining whether such is the case (Correction Law § 753 [1]; *see, Matter of Bonacorsa v Van Lindt,* 71 NY2d 605, 613-614):

"(a). The public policy of this state * * * to encourage the licensure and employment of persons previously convicted of one or more criminal offenses[;]

"(b). The specific duties and responsibilities necessarily related to the license or employment sought[;]

"(c). The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities[;]

"(d). The time which has elapsed since the occurrence of the criminal offense or offenses[;]

"(e). The age of the person at the time of occurrence of the criminal offense or offenses[;]

"(f). The seriousness of the offense or offenses[;]

"(g). Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct[; and]

"(h). The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public."

In its answer to the petition, the Board submitted an affidavit by a deputy director of its Division of Human Resources which indicated that in considering the petitioner's application for a teaching license, the Board's Office of Personnel Investigation applied the factors set forth in Correction Law § 753 (1). Specifically, the Board considered the following factors:

"a. the stated policy of the New York State Legislature to encourage the licensing and employment of persons previously convicted of criminal offenses;

"b. the specific duties and responsibilities of a high school teacher, particularly that:

"i. as a high school teacher, the petitioner would be entrusted with, and would serve as a role model to, students in their formative and impressionable ages;

"ii. teachers are generally held to a high and rigorous ethical standard because teachers occupy positions of extreme trust and their actions and decisions are generally non-reviewable;

"c. the offense for which the petitioner was convicted involved possession and sale of a controlled substance, and how this reflects on his fitness and ability to perform the duties and responsibilities of a high school teacher—a position of extreme trust which requires the highest level of ethical values and personal integrity from the individual occupying it;

"d. over nine years had elapsed between the petitioner's felony conviction and his application;

"e. the petitioner was neither a teenager nor a young adult at the time he committed the felony for which he was convicted, but was a fully-matured adult;

"f. the petitioner was convicted of a class B felony;

"g. all positive references submitted by the petitioner in support of his application; and

"h. criminal possession and/or sale of a controlled substance is one of six specifically enumerated crimes that are deemed of special concern to the Board of Education, as expressed in the Chancellor's Regulations, and the Board's legitimate interest in protecting the welfare of New York City school children."

The Supreme Court granted the petition and annulled the Board's determination concluding that the Board clearly did not consider all of the relevant factors required by Correction Law § 753 (1) because in the opinion of the court the Board did not give consideration to the petitioner's evidence of rehabilitation.

The standard of judicial review to be applied is clear. A court may not substitute its judgment for that of an administrative agency unless the agency has acted in a manner which is irrational, arbitrary, capricious or illegal (*see,* CPLR 7803 [3]; *Matter of Pell v Board of Educ.,* 34 NY2d 222; *Matter of Residents for Future of Briarcliff Manor v Village of Briarcliff Manor Bd. of Trustees,* 239 AD2d 350). The burden in this proceeding was on the petitioner to demonstrate that there was no rational basis for the Board's determination (*see, Matter of Grossman v Rankin,* 43 NY2d 493, 502; *Matter of Pell v Board of Educ., supra,* at 230-231; *Matter of Shafer v Regan,* 171 AD2d 311, 315, *affd* 80 NY2d 1006).

Contrary to the finding of the Supreme Court, the record in this case indicates that the Board fulfilled its legal obligation to consider all of the factors set forth in Correction Law § 753 (1). It is clear that the court was of the opinion that the Board did not give adequate weight to the petitioner's evidence of rehabilitation. The weight to be given to any evidence submitted, however, was to be determined by the Board. While rehabilitation is certainly relevant, it is but one of the eight factors to be considered and weighed by the Board (see, Matter of Bonacorsa v Van Lindt, 71 NY2d 605, 614, supra).

The evidence in the record which the court found significant consisted of letters attesting to the petitioner's academic achievements in his chosen area of studies, Spanish literature, as well as his demonstrated abilities as a tutor in various college programs. This might have been dispositive if the issue before the Board was the petitioner's technical competence to teach his chosen subject. That was not the issue before the Board and should not have been the issue before the Supreme Court. In fact, the issue was whether the petitioner's conviction would create an unreasonable risk to the safety or welfare of the children entrusted to the custody of the Board of Education. None of the letters submitted by the petitioner addressed this issue, or even indicated that the writers knew of the petitioner's conviction.

The Board also considered the petitioner's age at the time of the offense, and the significance of the nature of the offense. With regard to the latter, the Board took note that the Chancellor, in the regulations governing background investigations of pedagogical applicants, has expressed particular concern over the hiring of persons with prior convictions for the sale of controlled substances, and the serious implications of hiring such a person for a position in the school system (see, Chancellor's Regulation C-105 [4], [6]). Evidence of selling narcotics, even if it did not result in a conviction, is to be investigated and considered as indicative that the applicant's character is unbecoming a school system employee (see, Chancellor's Regulation C-105 [6]). The importance of the crime involved in this case was underscored by the admissions by the attorneys for the petitioner and the Board that they knew of no one ever being granted a pedagogical license after being convicted for selling drugs. The responsibility for seeing that holders of pedagogical licenses possess the requisite good character is entrusted to the Chancellor of the City School District of the City of New York (Education Law § 2590-h [20]). The Chancellor in turn has designated the Division of Human Resources

and the Office of Personnel Investigation to make the decisions. They have the expertise and experience to best evaluate the potential for an unreasonable risk to the children in the New York City school system. That is their job and their responsibility (*see, Matter of Burstein v Board of Examiners,* 187 AD2d 423). The petitioner is not without employment that appropriately utilizes his advanced academic accomplishments. He is currently teaching primarily in the Community College system where no license is required and the students are older, and presumably less impressionable, than those in the public school system.

The majority attaches undue significance to the petitioner's certificate of relief from civil disabilities, which creates a presumption of rehabilitation (*see,* Correction Law § 753 [2]). As previously stated, rehabilitation is but one of several factors to be considered, and the Board was not required to rebut the presumption in order to rationally determine that the issuance of a license to the petitioner would pose an unreasonable risk to the safety and welfare of the students and Board of Education employees (*see, Matter of Bonacorsa v Van Lindt,* 71 NY2d, at 614, *supra*). On the record before us, it cannot be said that the Board's determination was arbitrary and capricious. Rather, it is clear that the Supreme Court improperly substituted its judgment for that of the Board. Accordingly, I would reverse the judgment of the Supreme Court and reinstate the Board's determination.